CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

OCT 16 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT EDMUNDO ARMENDAREZ,<br>　　Plaintiff, | Civil Action No. 7:07CV00557 |
| v. | |
| ABB, INC.,<br>　　Defendant/Third-Party Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| ATS SPECIALIZED, INC.,<br>　　Third-Party Defendant. | By: Hon. James C. Turk<br>Senior United States District Judge |

In this action, plaintiff Robert Edmundo Armendarez alleges that he suffered injuries after falling from a ladder at an ABB, Inc. ("ABB") facility, and that ABB was negligent in the ladder's maintenance. ABB asks the court to grant it summary judgment on the ground that Armendarez was a "statutory employee" of ABB's at the time of the accident, an argument joined by third-party defendant ATS Specialized, Inc. ("ATS") in a separate motion. Upon review of the parties' submissions, and for the reasons set forth below, the court will grant ABB's and ATS's motions for summary judgment.

I.

In October 2004, Armendarez was employed by ATS as a tractor trailer driver. ABB manufactures power transformers, and contracted with ATS to load and transport these transformers to ABB's customers. Under ABB's contracts with its customers, ABB's "transformers delivered by truck must be tarped, chained at the base and loosely strapped with nylon straps." (Ex. A to S.J. Mem. in Sup., Affidavit of Linda K. Dillow ("Dillow Aff."), ¶ 5).

On or about October 26, 2004, Armendarez came to the ABB plant in Bland, Virginia, his first visit to the Bland facility. He was to deliver two transformers (which had already been placed on a trailer) to an ABB customer in the Dallas metropolitan area. Upon arrival, Armendarez reported to Linda Dillow in ABB's Traffic Department. There, Dillow told Armendarez that "he could begin chaining the load of power transformers using an ABB ladder, or that he could wait a few minutes for an ABB employee to bring a forklift to help tarp the load." (Dillow Aff., ¶ 8). Armendarez chose to not wait for any assistance, and instead began the tarping process himself. Armendarez set up the ladder next to the trailer, and while inspecting the load of transformers, fell off the ladder and sustained injuries.

Armendarez initially filed suit against ABB in the Circuit Court of Bland County on October 25, 2006. ABB was served on October 23, 2007, and removed the action to this court on November 20, 2007. On November 26, 2007, ABB filed a third-party complaint against ATS.[1] On July 10, 2008, ABB filed its motion for summary judgment and supporting memorandum. Plaintiff opposed via a memorandum submitted on August 22, 2008, to which ABB filed a reply on August 29, 2008. ATS then filed a motion for summary judgment (on ABB's behalf) on September 5, 2008, adopting the substance of ABB's arguments. The court heard oral argument from ABB and Armendarez on September 10, 2008.

**II.**

---

[1] In the third-party complaint, ABB alleges that ATS is obligated to defend, indemnify, and hold harmless ABB pursuant to the parties' contract carrier agreement. ABB seeks a declaratory judgment to this effect, as well as its attorneys' fees and costs. The third-party claim is rendered moot by the court's grants of summary judgment to ABB and ATS. (S.J. Mem. in Sup. at 1-2 n. 1).

-2-

The court has subject matter jurisdiction as all parties are citizens of different states,[2] and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). In this diversity action, the court will apply Virginia substantive law. See Erie Railroad v. Tompkins, 304 U.S. 64 (1938).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

### III.

The parties agree that if the plaintiff is considered a "statutory employee" under the Virginia Workers' Compensation Act, Va. Code § 65.2-100 et seq. ("the Act"), he would be subject to the Act's exclusivity provisions and could not sue ABB. See Va. Code § 65.2-307 ("The rights and remedies herein granted to an employee . . . shall exclude all other rights and remedies of such employee . . . on account of such injury, loss of service or death."). In relevant part, statutory employment is defined as follows:

---

[2] Armendarez is a citizen of Texas; ABB is incorporated in Delaware with its principal place of business in Connecticut; and ATS is incorporated, and has its principal place of business, in Minnesota.

-3-

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code § 65.2-302(A). Thus, in exchange for the right to recover workers' compensation benefits, statutory employees lose the right to recover tort damages against the statutory employer. See Burch v. Hechinger Co., 264 Va. 165, 168, 563 S.E.2d 745, 747 (2002). However, plaintiffs are still free to recover tort damages from an "other party" not covered by the Act. See Va. Code § 65.2-309(A).[3]

"The issue whether a particular person or entity is the statutory employer of an injured employee is a jurisdictional[4] matter presenting a mixed question of law and fact that must be determined under the facts of each case." Bosley v. Shepard, 262 Va. 641, 648, 554 S.E.2d 77, 81

---

[3] For example, Armendarez's concurrent lawsuit filed against the ladder manufacturer is not affected by whether ABB is deemed to be his statutory employer.

[4] While Virginia courts speak of the statutory employee question as a "jurisdictional" issue, a district court's deciding the issue on a summary judgment motion is proper. See Graves v. Cook, Civ. No. 7:01cv00533, 2002 U.S. Dist. LEXIS 6794, *2 n. 1 (W.D. Va. Apr. 17, 2002) ("[The statutory employee] argument goes to the merits of [plaintiff's] claim, not to federal subject matter jurisdiction. If the court were to consider the [Act's bar] as a jurisdictional question, then the Virginia General Assembly would effectively determine the limits of federal jurisdiction. Federal jurisdiction is limited by the United States Constitution and by Congress, not by state legislatures."); Havard v. Perdue Farms, Inc., 403 F. Supp. 2d 462, 463-65 (D. Md. 2005) (concluding that whether the Act's exclusivity provision bars plaintiff's lawsuit is properly decided on a motion for summary judgment). Moreover, even if the issue must be decided as a challenge to subject matter jurisdiction, the outcome would not be different. Subject matter jurisdiction may be raised sua sponte, Fed. R. Civ. P. 12(h)(3), and courts deciding this issue under Federal Rule of Civil Procedure 12(b)(1) essentially apply the summary judgment standard. See Glenn v. Lafon, 427 F. Supp. 2d 675, 677 (W.D. Va. 2006) (district courts should "apply the standard applicable to a motion for summary judgment") (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

-4-

(2001). In addition, Virginia courts have constructed three tests to help clarify whether a plaintiff should be considered a statutory employee: (1) the "normal work" test; (2) the "subcontracted fraction" test; and (3) the "stranger to work test." Stone v. Door-Man Mfg. Co., 260 Va. 406, 415, 537 S.E.2d 305, 309 (2000).[5]

The parties agree that the "normal work" test is most appropriate when claims are brought by a driver (Armendarez), employed by a "subcontractor" (ATS), who is injured by the alleged negligence of an "owner" (ABB). See Whalen v. Dean Steel Erection Co., Inc., 229 Va. 164, 170, 327 S.E.2d 102, 105-06 (1985).[6] The "normal work" test flows from the Supreme Court of Virginia's decision in Shell Oil Co. v. Leftwich:

> [The] test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test . . . is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.

212 Va. 715, 722, 187 S.E.2d 162, 167 (1972) (emphasis in original) (citation omitted). Stated more directly, "[i]f the facts establish that an individual performs activities that are normally performed by a person's employees rather than by independent contractors, then that individual is properly

---

[5] These tests are "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the [Act] to the facts in a particular case." Cinnamon v. Int'l Bus. Mach. Corp., 238 Va. 471, 478, 384 S.E.2d 618, 621 (1989).

[6] The "subcontracted fraction" test carves out an exception from the "normal work" test. When "the work out of which the accident arose was . . . 'obviously a subcontracted fraction of [the main] contract' and . . . 'not a part of the trade, business or occupation of' the owner, the general contractor who engaged the subcontractor to perform that fraction is the statutory employer of the injured worker." Stone, 260 Va. at 416, 537 S.E.2d at 310 (quoting Shell Oil Co. v. Leftwich, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972) and Va. Code § 65.2-302(B)). The "stranger to work" test derives from the "other party" language in § 65.2-309(A), and is commonly applied when a general contractor's employee is injured by a subcontractor's negligence. Id. at 417-18, 310-11.

considered that person's statutory employee for purposes of the Act." Burch, 264 Va. at 169, at 563 S.E.2d at 747 (citing Shell Oil).

## IV.

As a threshold matter, the court finds that the general activity ATS (and by extension, Armendarez) contracted to perform for ABB–namely delivery of ABB's goods to ABB's customers–was "part of [ABB's] trade, business or occupation." Va. Code § 65.2-302(A). Typically, Virginia courts find that manufacturers are the statutory employers of contract carrier employees who transport "goods from the manufacturer . . . to its customers." Leake v. Family Dollar Stores, Inc. 62 Va. Cir. 46, 48-50 (Warren Co. Cir. 2003) (surveying Virginia law and noting a general rule that distinguishes intra-company shipping and shipments to customers on the one hand, from mere deliveries to the manufacturer on the other). Transporting transformers to its customers is an essential part of ABB's business. (Dillow Aff., ¶¶ 3-4). See Floyd, Administratrix v. Mitchell, 203 Va. 269, 273, 123 S.E.2d 369, 372 (1962) ("[T]ransporting . . . pipe to the customers was a necessary element of [the pipe manufacturer's] business."); Cf. Conlin v. Turner's Express, Inc., 229 Va. 557, 559, 331 S.E.3d 454, 455 (1985) ("[T]ransporting machinery and parts from one plant to another was an essential element of [the owner's] business."). Likewise, the precise activity Armendarez had begun at the time of injury–tarping the load of the transformers–is too an essential element of ABB's business. See Hayden v. The Kroger Co., 17 F.3d 74, 77 (4th Cir. 1994) (holding that "transportation, loading, and unloading of canned goods is an essential function of Kroger's business," and that "Hayden became Kroger's statutory employee when he performed those duties at the time of his injury") (emphasis added).

Finally, application of the "normal work" test also results in Armendarez being ABB's

statutory employee at the time of his injury. The court finds that tarping a load at the Bland plant was normally a shared activity by both ABB and ATS employees. Armendarez does not dispute that "ABB and ATS employees share responsibility for loading, tarping and securing the power transformers to the trailer, as required under ABB's sales contracts."[7] (Dillow Aff., ¶7). Such shared responsibility is sufficient to make Armendarez ABB's statutory employee, barring this lawsuit. Cf. Fowler v. Int'l Cleaning Serv., Inc., 260 Va. 421, 428, 537 S.E.2d 312, 315-16 (2000) (in a case applying the "stranger to work test," the "combined efforts" of an owner and contractor to keep the owner's retail store clean made the plaintiff–an employee of the owner's–a statutory fellow employee with the contractor).

Armendarez offers two principal arguments as to why he was not ABB's statutory employee at the time of the accident. First, Armendarez claims that the contract between ABB and ATS, as well ABB's third-party complaint against ATS, "clearly placed the ultimate responsibility for tarping and securing the transformers on ATS and its employees." (S.J. Mem. in Opp. at 8). The contract makes ATS liable "[f]or loss, damage, injury or delay of any shipment . . . while in the custody of the carrier, possession or control of the carrier." (Ex. C to S.J. Mem. in Sup., Contract Carrier Agreement, ¶ 16). ABB's third-party complaint alleges that "[i]t was necessary for Mr. Armendarez to cover and or secure the load to the ATS trailer prior to shipment." (Third-Party Complaint, ¶ 11). The court finds that neither the contract nor the third-party complaint create a genuine issue of material fact with respect to whether Armendarez was ABB's statutory employee. The court agrees

---

[7] In his sworn affidavit, Armendarez acknowledged his understanding that "ABB employees may have assisted ATS employees with the actual tarping process in the past and were willing to assist me in the tarping process of this particular day." (Ex. A to S.J. Mem. in Opp., Affidavit of Robert Edmundo Armendarez ("Armendarez Aff."), ¶ 7).

with ABB that the contractual allocation of risk between ABB and ATS is immaterial to the statutory employment issue. Similarly, the language Armendarez points to in the third-party complaint does not state that Armendarez alone was responsible for tarping the transformers prior to shipment. Moreover, the very next paragraph of the third-party complaint contradicts plaintiff's assertion, as it alleges that "ABB offered Mr. Armendarez a forklift and forklift operator to assist in covering and securing the large transformers to the ATS trailer." (Id., ¶ 12). Finally, Dillow's sworn affidavit unequivocally states that ATS and ABB employees share responsibility for tarping down loads. (Dillow Aff., ¶ 7).

Second, Armendarez attempts to distinguish the act of tarping a load from "determining the appropriate tarping procedures." (S.J. Mem. in Opp. at 11). In his affidavit, Armendarez states that he "was not in the process of tarping the load when [he] fell," but "still in the process of determining the proper manner in which to tarp the load." (Armendarez Aff., ¶ 7). This is a specious distinction, that finds no support in case law. Determining how to tarp a load transformers is part and parcel of tarping them. While courts do ensure that a plaintiff's claimed injury occurred during work that was truly "part of [an owner's] trade, business or occupation," the two cases to which Armendarez cites only speak to this general principle,[8] not to carving up an activity into small enough constituent parts

---

[8] In Rice v. VVP America, Inc., 137 F. Supp. 2d 658 (E.D. Va. 2001), plaintiff Rice had clearly ceased any activity associated with the defendant's business at the time of her injury. Rice worked for an auto supply company, and the defendant was one of her customers. Id. at 659-60. When injured, Rice had stopped assisting defendant with unpacking her delivery (leaving the premises and returning with her product catalog), id. at 661, and was "taking and preparing a parts order for her own business, [which] was not an activity normally performed by employees of [the defendant]." Id. at 670. In Walls v. Food Lion, 66 Va. Cir. 26 (City of Richmond Cir. 2004), plaintiff Walls argued that at the time of his injury he had completed a delivery and was merely awaiting a bill of lading. Id. at 27. The court recognized that this particular distinction would have been "important," as it was undisputed that Food Lion's own employees did not have to wait for paperwork after making a delivery. Id. However, the Walls

-8-

Case 7:07-cv-00557-JCT    Document 23    Filed 10/16/08    Page 8 of 10    Pageid#: 162

for a plaintiff to then claim that he and only he exercised dominion over a particular sliver.

Instructive is the Fourth Circuit's analysis in Meredith v. Honeywell Int'l, Inc., 245 Fed. Appx. 325 (4th Cir. 2007). In Meredith, the plaintiff was a truck driver employed by Oakley Tank Services, which had contracted with Honeywell to haul the chemical caprolactam between Honeywell plants. Id. at 327. To load the caprolactam, a driver would park his truck at the loading station, provide paperwork to a Honeywell employee, and then wait for the truck to be filled with caprolactam. Id. While waiting for his truck to be filled, Meredith's chair collapsed beneath him in the Honeywell control room, resulting in his alleged injuries. Id. Meredith claimed that "he ceased being Honeywell's statutory employee while his truck was being refilled." Id. at 328 n. 3. The Fourth Circuit soundly rejected this hollow attempt at line-drawing, as "it was an essential part of the entire process of hauling the material that the driver complete his paperwork and wait while his tanker truck was filled with caprolactam." Id. The Fourth Circuit continued:

> Indeed, the contention that Meredith ceased to be a statutory employee of Honeywell while he was awaiting the filling of his truck is as frivolous as would be a contention that he ceased being a statutory employee had he been injured while stopping to catch his breath on his way to submitting his paperwork, or during the time he was exiting his truck after pulling into the Hopewell facility. The law does not provide for such piecemeal differentiation, and we decline to impose it in this case.

Id. (emphasis added). Though the claim in Meredith differs slightly from Armendarez's (ceasing to be engaged in the owner's work versus engaging in particular work that the owner's employees do not), Meredith's rationale applies with equal force here. The law simply does not provide for the

---

court ultimately found that Walls' claim lacked factual support, and held that he "was still engaged in the 'trade, business, or occupation' of Food Lion at the time of the accident because the delivery had not yet been completed." Id. at 28 (emphasis added) (citation omitted).

-9-

artificial distinction that Armendarez seeks.[9]

## V.

For the stated reasons, ABB's motion for summary judgment (Dkt. No. 8) and ATS's motion for summary judgment (Dkt. No. 19) will be **GRANTED**. The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

**ENTER**: This _15th_ day of October, 2008.

_/s/ James C. Turk_
Senior United States District Judge

---

[9] Moreover, even if this could be a relevant distinction, Armendarez's affidavit repeatedly states that he "considered" the manner in which to tarp the load to be a matter within his discretion as a truck driver. (Armendarez Aff., ¶ 7). Such "subjective belief[] . . . without more is insufficient to create a genuine issue of material fact" Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 135 (4th Cir. 2002).

-10-